No. 26,884.

THE STATE OF KANSAS, *Appellee*, v. LLOYD McCLURKIN, *Appellant*.

SYLLABUS BY THE COURT.

BURGLARY—*Instructions—Presence in Vicinity as Conclusive Evidence of Guilt.*
In a prosecution for an attempt to commit a burglary alleged to have been
attempted by the defendant and another, where the defendant offered evi-
dence in explanation of his presence at the place and time of the alleged
offense, an instruction that the presence of the defendant in the vicinity at
the time and place was a circumstance tending to prove his guilt which cast
upon him the burden of explaining how he came to be there, and if he
failed to do so such presence would be conclusive evidence of his guilt, is
material error.

Appeal from Crawford district court, division No. 1; DANIEL H. WOOLLEY,
judge. Opinion filed February 12, 1927. Reversed.

*A. B. Keller* and *George R. Malcolm,* both of Pittsburg, for the appellant.

*Charles B. Griffith,* attorney-general, *Roland Boynton,* assistant attorney-
general, *Ray R. Preyer,* county attorney, and *L. M. Ressler,* assistant county
attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The appellant, Lloyd McClurkin, was charged
with burglary in the second degree and was adjudged guilty of an
attempt to commit burglary. In his appeal his principal complaint
is of the instructions given by the trial court. The one chiefly com-
plained of is the following:

"You are instructed that the presence of the defendant in the vicinity of
and at the garage of the prosecuting witness, Thomas J. Rogers, in Cherokee,
Crawford county, Kansas, on the night of October 15, 1924, at the time of the
burglary, or attempt to commit a burglary, if you find that any offense was
committed, or attempted to be committed at the time, would be a circum-
stance tending to prove his guilt, and casts upon the defendant the burden of
explaining how he came to be there, or of giving some explanation, and if he
fails to do so such presence would be conclusive evidence of his guilt. The
explanation given must not only be reasonable, it must be credible, and ac-
count for his presence there in a manner consistent with his innocence, or
enough so to raise a reasonable doubt in the minds of the jury."

There was evidence introduced in behalf of the appellant to the
effect that appellant, who ran a jitney at Picher, Okla., was em-
ployed to take a man from that place to Cherokee, Kan. His charge

Burglary, 9 C. J. pp. 1082 n. 71, 1083 n. 80. Criminal Law, 16 C. J. pp. 529 n.
40, 534 n. 37, 535 n. 46, 542 n. 2; 8 R. C. L. 174.

for the trip was $8, and the man said he did not have the money, but had a new casing and inner tube which he would give appellant for the service, and that was agreed upon. The distance to Cherokee was about thirty miles, and on arrival there appellant directed him to what part of the city to drive, and pointed out the home where he said he lived and wished him to stop. There the man asked for appellant's flashlight, which was given him, and appellant accompanied him to a garage and the man told him that he had a balloon casing for him, and appellant replied that the man had said that he had a tire that would fit his car. Then the man said that he didn't live there, and that he was going to steal a tire. Appellant then said, "Let's go away from the premises"; and that it was then his purpose to surrender the man to the authorities. After going a few steps they were approached by men with shotguns, who fired on them and some of the shots struck appellant. He and his companion ran a distance between some buildings and appellant came around towards where his car was left, and found several men standing on guard near the car. Appellant says he told the man with him that he was going to get his car and explain to the men at the car how he happened to be there. His companion protested, and said he would go and get the car himself. Some shots were fired towards them and the man with appellant ran under a porch and as the men with the guns were pursuing appellant and his companion, and through mistake were about to shoot each other, evidently thinking that the other was one of the suspected criminals, appellant told them not to shoot each other. They thereupon took appellant into custody and the prosecution and conviction followed.

One of the complaints of appellant, which is not much urged, is that the evidence does not sustain the verdict, but in the absence of other claims of error it cannot be held that the evidence was so insufficient as to require a reversal. Some evidence of incriminating circumstances was produced which, taken together, must be held under the rules governing a review to be sufficient to sustain a verdict of conviction.

Evidence was offered in behalf of defendant tending to explain his presence at the place of the crime which tended to exculpate him and which required a proper instruction as to the inference or presumption of fact arising from his proximity to the place of the crime at the time it was attempted. It is the contention of appellant that the instruction given to the effect that the presence of the

defendant at the place of the crime was a circumstance tending to prove his guilt, which cast upon him the burden of explaining how he came to be at the place, and that if he failed to do so it would be conclusive evidence of his guilt, is material error. The contention must be sustained. It was competent, of course, to show his presence at the garage when the alleged offense was committed, and the court would have been warranted in telling the jury that his proximity at the place about the time of its commission, together with other circumstances brought out in the evidence, might warrant an inference or a presumption that he participated in the crime. (16 C. J. 542.) Here, however, the court told the jury that the bare circumstance of his presence at the place casts upon him the burden of making a satisfactory explanation of how he came to be there, and the failure to do so would be conclusive evidence of his guilt. The defendant was clothed with a presumption of innocence, and the burden throughout the trial rested upon the state to prove that he participated in an attempt to commit a burglary, and a conviction was not warranted by his mere unexplained presence at the place of the crime, nor unless all the evidence in the case taken together convinced the jury beyond a reasonable doubt that he participated in the attempt to commit a burglary.

In *State v. Powell*, 61 Kan. 81, 58 Pac. 968, where there was a conviction for burglary there was evidence that defendant had possession of property alleged to have been stolen, and the question was whether such possession alone raised a presumption of law that he was guilty of the charge, it was said:

"It has been frequently held in this state that such possession, unexplained, is *prima facie* evidence of larceny, but the instruction goes close to, if it does not pass over, the danger line when it throws the burden on the defendant of proving how he came into possession of the property. The burden of proof is upon the state, and does not shift or change to the defendant at any stage of the case. . . . Assuming, however, that a presumption of guilt arises in case of larceny from the possession of goods recently stolen, we do not feel warranted in still further extending the presumption that the evidence is of itself sufficient, if unexplained, to warrant a conviction for burglary." (p. 84.)

In a case where the circumstances of the possession of stolen goods obtained when a burglary was committed, the instruction of the court to the effect that the unexplained possession of the fruits of the crime immediately after its commission is as a matter of law conclusive evidence of the guilt of the possessor, was error. (*State*

*v. Deuel,* 63 Kan. 811, 66 Pac. 1037.)   In *State v. Herron,* 64 Kan. 363, 67 Pac. 861, it was held that the unexplained possession of recently stolen property might be submitted to the jury and that it with other evidence might be sufficient to justify a conviction, but that such possession did not give rise to a conclusive presumption of guilt.   (See, also, *State v. Conway,* 56 Kan. 682, 44 Pac. 627; *State v. Gillespie,* 62 Kan. 469, 63 Pac. 742; *State v. Jewell,* 88 Kan. 130, 127 Pac. 608; *State v. Rice,* 93 Kan. 589, 144 Pac. 1016.)

In *Karnes v. Commonwealth,* 125 Va. 758, it was held that the mere presence of the accused where the crime was committed was not alone sufficient to justify conviction, and that under the evidence relating to the presence of the accused he was entitled to have the jury told distinctly that his mere presence at the time the crime was committed was not sufficient to justify a conviction, and the refusal of such an instruction was prejudicial error.   The liberty of persons that happened to be present in a crowd where a theft, robbery or other crime was committed would be precarious indeed if their mere presence was deemed conclusive evidence of guilt in case they could not satisfy the jury how they happened to be there when the offense was committed.   Here the instruction went much further than that unexplained possession makes a *prima facie* case, as it placed the burden of proof upon the accused to explain his proximity to the place of the crime, and then states as a matter of law that an unreasonable explanation of his presence there of itself is conclusive evidence of his guilt.   It may be, as the state contends, that the explanation was not reasonable nor satisfactory, but that was a question for the determination of the jury under the guidance of a correct rule of law.   Under the evidence and circumstances of the case a correct statement of the law was an important matter.   It is not so much a question as to the weight of the evidence as it is that the jury was properly instructed in respect to the rule for weighing and applying the evidence.

For the error in the instruction the judgment must be reversed and the cause remanded for a new trial.