No. 45,431

THE STATE OF KANSAS, *Appellee,* v. HERMAN BROWN, JR., *Appellant.*

(457 P. 2d 130)

Opinion filed July 17, 1969.

*David C. All,* of Wichita, argued the cause, and was on the brief for the appellant.

*R. K. Hollingsworth,* Deputy County Attorney, argued the cause, and *Kent Frizzell,* Attorney General, *Keith Sanborn,* County Attorney, and *Roger Hughey,* Deputy County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: The defendant, Herman Brown, Jr., was convicted of second degree burglary and larceny. He has appealed.

Evidence presented by the state was to this effect: About 2 a. m., August 17, 1967, a liquor store was burglarized. The owner, Violet Stevens, lived next door. She was awakened by the sound of crashing glass and saw two men enter the store through a broken window and come out the same way with part of her stock of merchandise. Both men were young. One sported a goatee and wore heavy construction boots. The two men got into a maroon Volkswagen and sped away.

Officers were summoned, a description was given, and an alarm was sounded over the police network. About 2:45 a. m. an officer who had heard the police dispatch, passed by Thelma's Steak House and saw a man with a goatee. Pulling into the parking lot, the officer observed a maroon Volkswagen, which a license check showed was registered to a Roger R. Ayres, who was also charged with and convicted of the same burglary in the companion case of *State v. Ayres,* 203 Kan. 376, 454 P. 2d 534. Blood appeared to be on the floor boards of the car. The officer entered the club looking for Ayres and while inside he saw this defendant sitting at the end of the bar with bandages on his right arm.

After Ayres was found in the club, he accompanied the officer outside where a search of his Volkswagen revealed several bottles

of the stolen liquor. While Ayres and the officer were talking, Brown made an appearance, without his bandages. Upon questioning by the officer, Mr. Brown said he had received the cuts either in a fight or at work—the officer was not sure which. The cuts, which appeared to be recent, had not scabbed, but the blood had dried or congealed. Brown admitted knowing Ayres but was not detained at this time. About two hours later he was arrested behind the garage at his home.

The defendant's finger prints were found on three bottles of the purloined liquor which the officers had discovered in searching the maroon Volkswagen. Additional evidence disclosed that Mr. Brown had sold the bartender a half gallon of Kentucky Gentleman whiskey that same night for $8. This bottle of bourbon was identified as one of those stolen from Mrs. Stevens' liquor store.

With this brief summation of the evidence we turn to the points raised by the defendant on appeal.

It is first contended that the trial court erred in its instruction on possession of recently stolen property, in that possession was not defined. The instruction was in these words:

"One of the factual issues in this case is whether or not liquor taken in a burglary and larceny was in the possession of the defendant shortly after the commission of the burglary and the larceny.

"In this regard you are instructed that the laws of Kansas provide that possession of property taken in the commission of a burglary and larceny shortly after the commission of said burglary and larceny is prima facie evidence that the possessor or possessors committed the burglary and larceny, and throws upon any possessor the burden of explaining his possession. If such possession is unexplained, or if the explanation is not satisfactory, it is of itself sufficient to sustain a conviction of the burglary and larceny."

This instruction substantially reflects the law in this area as expounded by this court from an early date. (*State v. Cassady*, 12 Kan. 550; *State v. White*, 76 Kan. 654, 92 Pac. 829; *State v. Rice*, 93 Kan. 589, 144 Pac. 1016; *State v. Grey*, 154 Kan. 442, 119 P. 2d 468; *State v. Williams*, 196 Kan. 628, 413 P. 2d 1006; *State v. Oswald*, 197 Kan. 251, 417 P. 2d 261.)

But the defendant complains that failure to instruct on the meaning of possession, in its relationship to the inference of guilt, permitted the jury to speculate. We agree that the term "possession," as used in the context of the instruction given by the court imports more than an innocent handling of the stolen property; the term denotes control, or the right to exercise control and dominion, over

the property, even though this right be jointly shared. (See *State v. Phinis*, 199 Kan. 472, 430 P. 2d 251; *State v. Runnels*, 203 Kan. 513, 456 P. 2d 16.) Hence we believe it would have been appropriate for the court to have included an instruction concerning the nature and quality of the possession from which the inference of guilt might be drawn. However, we believe its omission was not prejudicial to the defendant under the circumstances of this case.

Evidence offered by the defense pertained only to alibi and related matters. No other issues appear to have been raised by the defendant at the trial. Moreover, evidence that the defendant sold a half gallon of the stolen bourbon, if believed by the jury, would clearly establish his control of and dominion over that part of the loot. (See *State v. Bell*, 109 Kan. 767, 201 Pac. 1110.) In the face of evidence to such effect, coupled with evidence that Brown's fingerprints were found on three of the stolen bottles found in Ayre's maroon Volkswagen within two hours after the burglary, the failure of the court to define possession can scarcely be said to constitute prejudicial error.

Neither of the two federal cases cited by the defendant are of controlling importance on this phase of the case because of factual differences.

The defendant next complains of the following portion of the court's instruction on circumstantial evidence:

"In many cases circumstantial evidence is the most convincing of all evidence; more convincing than direct testimony. A witness may be mistaken, self-decieved [*sic*] or untruthful. Facts and circumstances are definite and impartial.'"

In *State v. Murray*, 200 Kan. 526, 437 P. 2d 816, this identical instruction was challenged and we held that while the instruction could not be approved, we were unable to say it had resulted in prejudice to the defendant's substantial rights under the existing circumstances of that case. We believe the same may be said in this case in view of the compelling nature of the evidence. However, we are constrained at this time to note our disapproval of the instruction, which we trust will be heeded, because of the undue stress it places on the force and cogency of circumstantial evidence. This court said many years ago in *State v. Scott*, 117 Kan. 303, 235 Pac. 380:

". . . But when the jurors must be informed of the circumstances by the testimony of witnesses, there may be false testimony concerning circumstantial

evidence as well as positive evidence. (See, 1 Wigmore on Evidence, 2d ed., § 26, and authorities there cited; also 16 C. J. 763.)" (p. 324.)

A third point raised by the defendant pertains to a portion of the testimony given by a Wichita police officer who, after talking with Mrs. Stevens, supplied the police dispatcher with a description of the two burglars. The trial court, after sustaining an objection to a question put to the officer designed to elicit what Mrs. Stevens had told him, then advised the officer he could relate the descriptions of the men which he himself had given to the dispatcher, and the witness thereupon proceeded to do so. It is insisted this testimony was inadmissible as being essentially hearsay.

Assuming, without deciding, that the officer's testimony constituted objectionable hearsays in an indirect guise, we cannot brand it as substantially prejudicial to the defendant. The essence of the description to which exception was taken is simply this: that one of the men involved possibly might have been an Indian or a Mexican male and was darker than the other. Even though Mr. Brown was of Indian extraction, the description relayed to the dispatcher was of such a vague and generalized character that we believe it could not have been substantially damaging $vis$-$à$-$vis$ the state's evidence.

Although it is differently phrased, the defendant's fourth claim of error is that the verdict is not supported by the evidence. It is our opinion that the evidence already detailed sufficiently refutes the validity of this contention and that further discussion on this point is not required.

It has often been said by this court that errors which do not prejudicially affect the substantial rights of an accused do not constitute grounds for reversal. (2 Hatcher's Kansas Digest [Rev. Ed.] Criminal Law, § 439.) This principle, we believe, is applicable to the facts of the present case.

Prejudicial error has not been made to appear and the judgment of the court below is affirmed.